**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

|  |  |  |
|---|---|---|
| TIMOTHY MINKER, VALERIE LIU and JOHN DOES 1-100, *on behalf of themselves and others similarly situated,* | : : : : | Case No. |
| Plaintiffs, | : : | **CLASS ACTION COMPLAINT** |
| - against - | ; : : | |
| RICOLA USA, INC., | | JURY TRIAL DEMANDED |
| Defendant. | | |

-------------------------------------------------------x

Plaintiffs, TIMOTHY MINKER, VALERIE LIU and JOHN DOES 1-100 (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class Action Complaint against Defendant, RICOLA USA, INC. (hereinafter, "RICOLA" or the "Defendant"), and state as follows based upon their own personal knowledge and the investigation of their counsel:

<u>NATURE OF THE ACTION</u>

1.      In today's increasingly health-conscious society, consumers are more motivated to seek out products with health benefits. As a result, consumers rely more than ever on accurate information when it comes to making smart food choices. When it comes to packaged foods, consumers rely on standards promulgated by federal and state laws to ensure that these labels are accurate and not misleading.

2.     Manufacturers are fully conscious of this trend, and have moved to market their products in a way to capitalize on demand for healthy options. Some manufacturers have intentionally mislabeled products in an effort to profit from the desire for healthy goods.  As a result, federal and state regulations have been enacted which place a greater requirement on specificity and accuracy when manufacturers make various claims about their products.

3.     Against this backdrop, Defendant engaged in and continues to engage in a widespread, uniform marketing campaign using the product packaging to mislead consumers about the naturalness of its Ricola Herb Drop Products (defined in Paragraph 4 below). Defendant's packaging describes each package of such throat drop products with unsubstantiated "Natural" claims for numerous products in their "Herb Drops" line. Defendant has sold misbranded products using misleading advertising to millions of consumers, who relied on Defendant's advertising and were injured as a result.

4.     Defendant's Herb Drop Products are cough suppressant, supplement and herb throat drop products sold in grocery stores, pharmacies and supermarkets such as CVS and Walgreen's throughout the United States. Defendant sells the following misbranded products, depicted in **EXHIBIT A** (herein, the "Products"):

    i.       Ricola Cherry Honey herb throat drops
    ii.      Ricola Honey Lemon with Echinacea cough suppressant throat drops
    iii.     Ricola Lemon Mint herb throat drops
    iv.     Ricola Sugar-free Lemon Mint herb throat drops
    v.      Ricola Mixed Berry with Vitamin C supplement drops
    vi.     Ricola Sugar-free Green Tea with Echinacea cough suppressant throat drops
    vii.    Ricola Sugar-free Swiss Cherry herb throat drops
    viii.   Any other Ricola cough suppressant, supplement and herb throat drops with misleading "Natural" claims.

5.     Defendant prominently represents "Naturally Soothing Relief that Lasts" on the front of the packaging of each of the Products. Defendant's promotion of its Products   as

"Naturally Soothing" is deceptive because it builds upon the fiction that the Products are made entirely of naturally occurring or minimally processed ingredients with no added non-natural or synthetic ingredients, when they are not.

6.     Plaintiffs and Class members reviewed Defendant's misleading marketing and Product packaging, reasonably relied in substantial part on the labels and were thereby deceived in deciding to purchase the Products for a premium price.

7.     Plaintiffs bring this consumer class action on behalf of themselves and all other persons nationwide, who, from the applicable limitations period up to and including the present (the "Class Period"), purchased for consumption and not resale any of the Products.

8.     During the Class Period, Defendant made and continues to make unsubstantiated "Naturally Soothing" claims for its Products. Defendant's "Naturally Soothing" claims are deceptive. The term "Natural" only applies to those products that contain no non-natural or synthetic ingredients and consist entirely of ingredients that are only minimally processed. The Defendant, however, deceptively marketed Products as "Naturally Soothing" even though they all contain synthetic ingredients such as Ascorbic Acid (Vitamin C), Citric Acid and Malic Acid, none of which is extracted from fruits but industrially synthesized via complex chemical synthetic routes and thus cannot be considered "minimally processed."[1] These claims are (i) unfair, deceptive and fraudulent, (ii) an unconscionable trade and business practice and (iii) false advertising.

---

[1] *See, e.g.*, *Biotechnology in the chemical industry*, THE ESSENTIAL CHEMICAL INDUSTRY, March 18, 2013, *available at* http://www.essentialchemicalindustry.org/materials-and-applications/biotechnology-in-the-chemical-industry.html; Luciana P.S Vandenberghe et al., *Solid-state fermentation for the synthesis of citric acid by Aspergillus niger*, BIORESOURCE TECHNOLOGY, 74:2, 175–178, September 2000.
 *available at* http://www.sciencedirect.com/science/article/pii/S0960852499001078.

9.     Defendant's actions constitute violations of the Federal Food Drug & Cosmetic Act ("FDCA") Section 403(a)(1) (21 U.S.C. 343(a)(1)) and New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349, as well as other similar deceptive and unfair practices and/or consumer protection laws in other states.

10.     Defendant violated statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak_ Code § 45.50.471, *et seq.;*
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
7) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
16) Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*
17) Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*
18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*
19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*
20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*
21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*
22) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
23) Michigan Consumer Protection Act, § § 445.901, *et seq.;*
24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
25) Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*
26) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

*27)* Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

*28)* Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*

*29)* Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

*30)* New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*

*31)* New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*

*32)* New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq.;*

*33)* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*

*34)* North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

*35)* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*

*36)* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*

*37)* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

*38)* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*

*39)* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*

*40)* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

*41)* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

*42)* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*

*43)* Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*

*44)* Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act

*45)* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*

*46)* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

*47)* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*

*48)* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*

*49)* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

*50)* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*

*51)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

11.     Defendant has been unjustly enriched as a result of its conduct. As a result of its unfair and deceptive practices described herein, Defendant has collected millions of dollars from the sales of the Products that it would not have otherwise earned. By marketing the Products as "Naturally Soothing," Defendant deceived the Plaintiffs and other consumers nationwide by advertising the Products as "Natural" when the Products contain the synthetic ingredients Ascorbic Acid (Vitamin C), Citric Acid and Malic Acid.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs, *see* 28 U.S.C. § 1332(d)(2).

13.     The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C § 1331 because it arises under the laws of the United States.

14.     The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

15.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

16.     The Court has personal jurisdiction over Defendant because the Products are advertised, marketed, distributed and sold throughout New York State; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; Defendant is authorized to do business in New York State; and Defendant has sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

17.     Venue is proper in this district pursuant to 28 U.S.C § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and

Defendant is subject to personal jurisdiction in this District. Plaintiff MINKER purchased and consumed Defendant's Products in New York County.

**PARTIES**

*Plaintiffs*

18.     Plaintiff TIMOTHY MINKER is a citizen of the state of New York and resides in New York County. Plaintiff MINKER was exposed to Defendant's Product packaging, and, in reliance on its representations, purchased the falsely labeled Product(s) for personal consumption in the State of New York within the past six months. Plaintiff MINKER has purchased the Ricola Lemon Mint Herb Drop Products from various stores, including but not limited to Duane Reade. The purchase price was $2.99 (or more) for an individual Product. Plaintiff MINKER substantially relied on Defendant's natural claims in deciding to purchase the Products. Plaintiff MINKER purchased the Product(s) at a premium price and was financially injured as a result of Defendant's deceptive conduct as alleged herein. Further, should Plaintiff MINKER encounter any Ricola Products in the future, he could not rely on the truthfulness of the packaging, absent corrective changes to the packaging. However, Plaintiff MINKER would still be willing to purchase the current formulation of the Ricola Products, absent the price premium, so long as Defendants engage in corrective advertising.

19.     Plaintiff VALERIE LIU is, and at all times relevant hereto has been, a citizen of the State of California and resides in Los Angeles, California. Plaintiff LIU was exposed to Defendant's Product packaging, and, in reliance on its representations, purchased the falsely labeled Product(s) for personal consumption in the State of California within the past six months. Plaintiff LIU purchased the Ricola Honey Lemon with Echinacea Cough Suppressant – Throat Drops and Ricola Swiss Cherry Herb Throat Drop Products from various stores, including but

not limited to CVS and Target, respectively. The purchase price was $2.99 (or more) and $4.99 (or more) respectively for an individual Product. Plaintiff LIU substantially relied on Defendant's natural claims in deciding to purchase the Products. Plaintiff LIU purchased the Products at a premium price and was financially injured as a result of Defendant's deceptive conduct as alleged herein. Further, should Plaintiff LIU encounter any Ricola Products in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging. However, Plaintiff LIU would still be willing to purchase the current formulation of the Ricola Products, absent the price premium, so long as Defendants engage in corrective advertising.

20.     Plaintiffs JOHN DOES 1-100 are, and at all times relevant hereto has been, citizens of the any of the fifty states and the District of Columbia. During the Class Period, Plaintiffs JOHN DOES 1-100 purchased the Products for personal consumption or household use within the United States. Plaintiffs purchased the Products at a premium price and were financially injured as a result of Defendant's deceptive conduct as alleged herein.

*Defendant*

21.     Defendant RICOLA USA, INC. is a company organized under the laws of the State of New Jersey with a principle place of business located at 6 Campus Dr. 2nd Floor South, Parsippany, NJ 07054. Defendant manufactured, advertised, marketed and sold its Products with unsubstantiated natural claims to millions of consumers nationwide.

22.     Defendant develops, manufactures, distributes, markets and sells cough suppressant, supplement and herb throat drop products throughout the fifty states and the District Columbia. The labeling, packaging, and advertising for the Ricola Herb Drop Products, relied upon by Plaintiffs, were prepared and/or approved by Defendant and its agents, and were

disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. Such labeling, packaging and advertising were designed to encourage consumers to purchase the Products and reasonably misled the reasonable consumer, i.e. Plaintiffs and the Class, into purchasing the Products. Defendant owned, manufactured and distributed the Products, and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling, packaging and advertising for the Products.

## FACTUAL ALLEGATIONS

### Defendant's Products

23.     Defendant manufactures, markets and sells the following misbranded Products throughout the United States:

i.      Ricola Cherry Honey herb throat drops
ii.     Ricola Honey Lemon with Echinacea cough suppressant throat drops
iii.    Ricola Lemon Mint herb throat drops
iv.     Ricola Sugar-free Lemon Mint herb throat drops
v.      Ricola Mixed Berry with Vitamin C supplement drops
vi.     Ricola Sugar-free Green Tea with Echinacea cough suppressant throat drops
vii.    Ricola Sugar-free Swiss Cherry herb throat drops
ix.     Any other Ricola cough suppressant, supplement and herb throat drops with misleading "Natural" claims.

24.     The Products are available at large supermarket chains and major retail outlets throughout the United States, including but not limited to Whole Foods, Kroger, Food Lion, Meijer, Costco Wholesale and Ralphs.

### Defendant's Natural Claims

25.     The term "Natural" only applies to products that contain no non-natural or synthetic ingredients and/or consist entirely of ingredients that are only minimally processed. Defendant deceptively markets the Ricola Herb Drop Products as "Naturally Soothing" when they contain the synthetic ingredients Ascorbic Acid (Vitamin C), Citric Acid and Malic Acid,

none of which are extracted from citrica fruits but industrially synthesized via complex chemical synthetic routes and thus cannot be considered "minimally processed."

26. **Ascorbic Acid** occurs naturally in certain foods as Vitamin C, or L-ascorbic acid. However, Ascorbic Acid is produced commercially and used as a food additive. It is considered to be synthetic by federal regulation. 7 C.F.R. § 205.605(b). Ascorbic Acid used in foods is not naturally-occurring because it is synthetized through a process known as the Reichstein Process. The Reichstein Process uses the following steps: (1) hydrogenation of D-glucose to D-sorbitol, an organic reaction with nickel as a catalyst under high temperature and high pressure; (2) Microbial oxidation or fermentation of sorbitol to L-sorbose with acetobacter at pH 4-6 and 30º C; (3) protection of the 4 hydroxyl groups in sorbose by formation of the acetal with acetone and an acid to Diacetone-L-sorbose (2,3:4,6-Diisopropyliden-α-L-sorbose); (4) Organic oxidation with potassium permanganate followed by heating with water to yield 2-Keto-L-gulonic acid; and (5) a ring-closing step or gamma lactonization with removal of water. In recent years, Chinese chemists have developed a simplification of the Reichstein Process that substitutes biological oxidation using genetically engineered microorganisms for chemical oxidation. This manufacturing process places it outside of a reasonable consumer's definition of "All Natural."

27. **Citric Acid** (2-hydroxy-propane-1,2,3-tricarboxylic acid) is a synthetic, non-natural ingredient. While the chemical's name has the word "citric" in it, Citric Acid is no longer extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutant strains of the black mold fungus, *Aspergillus niger*.[3] A technical evaluation report for the substance citric acid compiled by the United States Department of Agriculture, Agricultural Marketing Service ("USDA AMS") for the National Organic Program classified Citric Acid as

---

[3] *See, e.g.*, Belén Max, et al., *Biotechnological production of citric acid*, BRAZILIAN JOURNAL OF MICROBIOLOGY, 41.4 São Paulo (Oct./Dec. 2010).

"Synthetic Allowed". *See* **EXHIBIT B**, Page 4. As one of the USDA AMS reviewers commented,

> "[Citric acid] is a natural[ly] occurring substance that commercially goes through numerous chemical processes to get to [its] final usable form. This processing would suggest that it be classified as synthetic." *Id.* at 3.

The report further explains, under the "How Made" question, that citric acid is made –

> "Traditionally by extraction from citrus juice, no longer commercially available. It is now extracted by fermentation of a carbohydrate substrate (often molasses) by citric acid bacteria, *Aspergillus niger* (a mold) or *Candida guilliermondii* (a yeast). Citric acid is recovered from the fermentation broth by a lime and sulfuric acid process in which the citric acid is first precipitated as a calcium salt and then reacidulated with sulfuric acid." *Id.* at 4.

28. **Malic Acid** is a synthetic compound. U.S. International Trade Commission, Synthetic Organic Chemical Index, USTIC Pub. 2933 (Nov. 1995). It is synthetically produced by the hydration of fumaric or maleic acid. 21 C.F.R. § 184.1069. Both fumaric acid and maleic acid are hazardous substances. 40 C.F.R. 116.4. Malic Acid is not permitted in baby foods. 21 C.F.R. § 184.1069(d). Malic Acid is a preservative.

29. Because Ascorbic Acid (Vitamin C), Citric Acid and Malic Acid are synthetic acids and cannot be reasonably considered natural ingredients, Defendant's claim that the Products are "Naturally Soothing" is false, deceptive, and misleading, and the Products are misbranded under federal and state law. Defendant's labeling as alleged herein is false and misleading and was designed to increase sales of the Products at issue. Defendant's misrepresentations are part of its systematic labeling practice.

30. Defendant's misleading marketing campaign begins with its unsubstantiated and well-promoted naturalness claims. Defendant's Ricola Herb Drop Products are advertised as "Naturally Soothing" on the packaging of the Products and their respective product pages on the Ricola website. The "Naturally Soothing" claim is prominently represented in large font print at

the center of the packaging as the first thing a reasonable consumer who is looking to learn more about the Products will see, as shown below:

 

31.     Defendant has already once changed the labeling on the Products in recent years from "**Natural**" to "Naturally Soothing". Please see **EXHIBIT C** for images of example products bearing the old label.

32.     Defendant is well aware of consumer tendencies to seek out food products labeled as "Natural" and takes advantage of them to mislead consumers. By engaging in this deceptive scheme, Defendant wrongfully capitalized on and reaped enormous profits by playing on consumers' strong preference for food products made entirely of natural or minimally processed ingredients, while forgoing the additional expense of actually providing products that are free of non-natural, synthetic and/or chemically processed ingredients.

**Defendant's Natural Claims Violate Identical State and Federal Law**

33.     Defendant's labeling and advertising of the Ricola Herb Drop Products as "Naturally Soothing" violate various state and federal laws against misbranding.

34.     The federal Food, Drug, and Cosmetic Act (the "FDCA") provides that "[a] food shall be deemed misbranded – (a) (1) its labeling is false or misleading in any particular." 21 U.S.C. § 343 (a)(1).

35.     Defendant's "Naturally Soothing" claim also violates various state laws against misbranding which mirror federal law. New York, California and other state law broadly prohibit the misbranding of food in language identical to that found in regulations promulgated pursuant to the FDCA, 21 U.S.C. §§ 343 *et seq.*:

> Pursuant to N.Y. Agm. Law § 201, "[f]ood shall be deemed to be misbranded: 1. If its labeling is false or misleading in any particular… ."

> Pursuant to California's Sherman Food, Drug and Cosmetics Law, California Health and Safety Code § 110660, "[a]ny food is misbranded if its labeling is false or misleading in any particular."

36.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those claims that might be technically true, although still misleading. If any one representation in the labeling is misleading, the entire food is misbranded. No other statement in the labeling cures a misleading statement. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove that anyone was actually misled.

*Definition of Natural*

37.     The FDA did not intend to and has repeatedly declined to establish a final rule with regard to a definition of the term "All Natural" in the context of food labeling. As such, Plaintiff's state consumer protection law claims are not preempted by federal regulations. *See Jones v. ConAgra Foods, Inc.*, 2012 WL 6569393, *6 (N.D. Cal. Dec. 17, 2012). Additionally, the primary jurisdiction doctrine does not apply "because the FDA has repeatedly declined to adopt formal rule-making that would define the word 'natural.'" *Id.* at p. 8.

38.     The "FDA has not developed a definition for use of the term natural or its derivatives," but it has loosely defined the term "All Natural" as a product that "does not contain added color, artificial flavors, or synthetic substances." According to federal regulations, an ingredient is synthetic if it is:

> [a] substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes. 7 C.F.R. §205.2.

39.     Although there are no exact definitions of "Natural" in reference to food, cosmetic or oral care ingredients, there are no reasonable definitions of "Natural" that include ingredients that, even if sourced from "nature," are subjected to extensive transformative chemical processing before their inclusion in a product.  For example, the National Advertising Division of the Better Business Bureau ("NAD") has found that a "All Natural" ingredient does not include one that, while "literally sourced in nature (as is every chemical substance), . . . is, nevertheless subjected to extensive processing before metamorphosing into the" ingredient that is included in the final product.

**Plaintiffs were Injured as a Result of Defendant's Misleading and Deceptive Conduct**

40.     Plaintiffs and Class members read the labels on Defendant's Products, including statements making unlawful natural claims.

41.     Defendant's labeling claims were a material factor in Plaintiffs' and Class members' decisions to purchase the Products. Based on Defendant's claims, Plaintiffs and Class members believed that the Products were a better and healthier choice than other available throat drop products.

42.     As a result of Defendant's deceptive and misleading labeling, Plaintiffs and Class members did not know that the Products are not "Naturally Soothing." New York and California state laws broadly prohibit the misbranding of food in language identical to that found in the FDCA.

43.     Plaintiffs relied on the labeling and representations on Defendant's Product packaging.

44.     At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that Defendant's Products were misbranded as set forth herein, and would not have bought the Products had they known the truth about them.

45.     At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that Defendant's naturalness claims were unlawful as set forth herein, and would not have bought the Products had they known the truth about them.

46.     Reasonable consumers would be, and were, misled in the same manner as Plaintiffs in that a reasonable consumer might attribute health benefits to the naturalness claims provided by both Defendant and its retailers.

47.     As a result of Defendant's misrepresentations, Plaintiffs and millions of other consumers throughout the United States purchased the Products.

48.     Defendant's labeling, advertising, and marketing as alleged herein is false and misleading and designed to increase sales of the Products. Defendant's misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendant's representations in determining whether to purchase the Products at issue. Plaintiffs and Class members would not have purchased the Defendant's misbranded Products had they known they were misbranded.

49.     Plaintiffs and the Class have been damaged by Defendant's deceptive and unfair conduct in that they purchased misbranded Products and paid premium prices they otherwise would not have paid had Defendant not made unlawful nutrient content and naturalness claims.

## CLASS ACTION ALLEGATIONS

*The Nationwide Class*

50.     Plaintiffs bring this action as a class action pursuant Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

> All persons or entities in the United States who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

*The New York Class*

51.     Plaintiff MINKER seeks to represent a class consisting of the following subclass (the "New York Class"):

> All New York residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

*The California Class*

52.     Plaintiff LIU seeks to represent a class consisting of the following subclass (the "California Class"):

> All California residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

53.     Plaintiffs reserve the right to revise the Class definition based on facts learned in the course of litigating this matter.

54.     <u>Numerosity</u>: This action has been brought and may properly be maintained as a class action against Defendant under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are hundreds of thousands of members in the Nationwide Class, New York Class and California Class. Based on sales of the Products, it is estimated that each Class is composed of more than 1,000 persons. Furthermore, even if subclasses need to be created for these consumers, it is estimated that each subclass would have thousands of members. The persons in each of the Classes are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

55.     <u>Common Questions Predominate</u>: Questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Classes because each Class member's claim derives from the same false, misleading and deceptive misconduct. The

common questions of law and fact involved predominate over any questions affecting only Plaintiffs or individual Class members. Thus, proof of a common or single set of facts will establish the right of each member of the Classes to recover. Among the questions of law and fact common to the Classes are:

a.  whether labeling "Naturally Soothing" on Products containing one or more highly processed ingredients, including Ascorbic Acid (Vitamin C), was false and misleading;

b.  whether Defendant engaged in a marketing practice intended to deceive consumers by labeling Products as "Naturally Soothing," even though such Products contained the synthetic, highly processed ingredients Ascorbic Acid (Vitamin C), Citric Acid and Malic Acid;

c.  whether Defendant caused Plaintiffs and the Class to purchase Products that were artificial, synthetic, or otherwise unnatural;

d.  whether Defendant should be enjoined from marketing the Products as "Naturally Soothing" and whether Defendant should be required to disclose the fact that one or more ingredients were synthetic;

e.  whether Defendant's website and other media representations violate federal, state or common law by misleading consumers;

f.  whether Defendant deprived Plaintiffs and the Class of the benefit of the bargain because the Products purchased were different than what Defendant warranted;

g.  whether Defendant deprived Plaintiffs and the Class of the benefit of the bargain because the Products they purchased had less value than what was represented by Defendant;

h.  whether Defendant has been unjustly enriched at the expense of Plaintiffs and other Class members by its misconduct; and

i.  whether Defendant must disgorge any and all profits it has made as a result of its misconduct.

56.  <u>Typicality</u>: Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiffs purchased the Products during the Class Period and sustained similar injuries arising out of Defendant's conduct in violation of the consumer protection laws of each of the fifty states and the District of Columbia. Defendant's unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendant's wrongful misconduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

57.  <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and pursue the interests of the Class and have retained competent counsel experienced in prosecuting nationwide class actions.  Plaintiffs understand the nature of their claims herein, have no disqualifying conditions and will vigorously represent the interests of the Class.   Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class.  Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Class.  Plaintiffs and Plaintiffs' counsel have the necessary financial resources to

adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

58.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

59.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

60.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

61.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

62.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

63.     Plaintiff MINKER realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

64.     Plaintiff MINKER brings this claim individually and on behalf of the other members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law ("NY GBL") § 349.

65.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

66.     Under the § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

67.     Any person who has been injured by reason of any violation of the NY GBL may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual

damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

68.     The practices employed by Defendant, whereby Defendant labeled, packaged, and marketed their Products as "Naturally Soothing" were unfair, deceptive, and misleading and are in violation of the NY GBL § 349.

69.     The foregoing deceptive acts and practices were directed at customers.

70.      Defendant should be enjoined from labeling its Products as "Naturally Soothing", as described above pursuant to NY GBL § 349.

71.     Plaintiff MINKER, on behalf of himself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL, and such other relief as this Court deems just and proper.

## COUNT II

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

72.     Plaintiff MINKER realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

73.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misbranding their Products as "Naturally Soothing."

74.     The practices employed by Defendant, whereby Defendant advertised, promoted, and marketed that their Products are "Naturally Soothing" were unfair, deceptive, and misleading and are in violation of NY GBL § 349.

75.     The foregoing deceptive acts and practices were directed at consumers.

76. Plaintiffs and the other Class members suffered a loss as a result of Defendant's deceptive and unfair trade acts. Specifically, as a result of Defendant's deceptive and unfair trade acts and practices, Plaintiffs and the other Class members suffered monetary losses associated with the purchase of Products, *i.e.*, the purchase price of the Product and/or the premium paid by Plaintiffs and the Class for said Products.

## COUNT III

### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT, Cal. Civ. Code § 1750, *et seq.*

77. Plaintiff LIU realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

78. Plaintiff LIU brings this claim individually and on behalf of the other members of the California Class for Defendant' violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

79. Plaintiff LIU and California Class members are consumers who purchased the Products for personal, family or household purposes. Plaintiff LIU and the California Class members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiff LIU and the California Class members are not sophisticated experts with independent knowledge of corporate branding, labeling and packaging practices.

80. Products that Plaintiff LIU and other California Class members purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

81. Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

82. Defendant violated federal and California law because Defendant's representations in labeling, advertising, and marketing its Products as "Naturally Soothing" were unfair, deceptive, and misleading.

83. California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses or benefits which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents that the Products have characteristics, ingredients, or benefits which they do not have.

84. Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9), because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it advertises goods with the intent not to sell the goods as advertised.

85. Plaintiff LIU and the California Class members are not sophisticated experts about the corporate branding, labeling and packaging practices. Plaintiff LIU and the California Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were true and lawful.

86. Plaintiff LIU and the California Class suffered injuries caused by Defendant because (a) they would not have purchased the Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein; (b) they paid a price premium for the Products

due to Defendant's misrepresentations that its Products were "Naturally Soothing"; and (c) the Products did not have the ingredients, characteristics or benefits as promised.

87. On or about September 11, 2015, prior to filing this action, a CLRA notice letter was served on Defendant which complies in all respects with California Civil Code § 1782(a). Plaintiff LIU sent Defendant, RICOLA USA, INC., on behalf of herself and the proposed Class, a letter via certified mail, return receipt requested, advising Defendant that they are in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiff LIU's letter is attached hereto as **EXHIBIT D**.

88. Wherefore, Plaintiff LIU seeks damages, restitution, and injunctive relief for these violations of the CLRA.

## COUNT IV

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, California Business & Professions Code §§ 17200, *et seq.*

89. Plaintiff LIU realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

90. Plaintiff LIU brings this claim individually and on behalf of the members of the proposed California Class for Defendant's violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

91. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

92.     Defendant violated federal and California law because Defendant's representations in labeling, advertising, and marketing its Products as "Naturally Soothing" were unfair, deceptive, and misleading.

93.     Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating the federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 343 *et. seq.*, 21 U.S.C. §§ 343(a)(1), 343(k); N.Y. Agm. Law § 201; California Health and Safety Code §§ 110660, 110740, the CLRA, and other applicable law as described herein.

94.     Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising is of no benefit to consumers.

95.     Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiff LIU and the California Class to believe that the "Naturally Soothing" representation made about the Products were lawful, true and not intended to deceive or mislead the consumers.

96.     Plaintiff LIU and the California Class members are not sophisticated experts about the corporate branding, labeling, and packaging practices of the Products. Plaintiff LIU and the California Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were true and lawful.

97.     Plaintiff LIU and the California Class lost money or property as a result of Defendant's UCL violations because (a) they would not have purchased the Products on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the Products due to

Defendant's misrepresentations; and (c) the Products did not have the characteristics, benefits, or ingredients as promised.

**COUNT V**

**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW,**
**California Business & Professions Code §§ 17500, *et seq.***

98.     Plaintiff LIU realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

99.     Plaintiff LIU brings this claim individually and on behalf of the members of the proposed California Class for Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

100.    Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

101.    Defendant engaged in a scheme of offering misbranded Products for sale to Plaintiff LIU and the California Class members by way of making false and misleading representations that such Products were "Naturally Soothing" on the Products' packaging, labeling, and website. Such practice misrepresented the characteristics, benefits and ingredients of the misbranded Products. Defendant's advertisements and inducements were made in California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq.* in that the product packaging was intended as inducements to purchase

Defendant's Products. Defendant knew that these statements were unauthorized, inaccurate, and misleading.

102. Defendant violated federal and California law because Defendant's representations in labeling, advertising, and marketing its Products "Naturally Soothing" were unfair, deceptive, and misleading.

103. Defendant violated § 17500, *et seq.* by misleading Plaintiff LIU and the California Class to believe that the "Naturally Soothing" representations made about the Products were true as described herein.

104. Defendant knew or should have known, through the exercise of reasonable care that the Products were and continue to be misbranded, and that its representations about the naturalness of the Products were untrue and misleading.

105. Plaintiff LIU and the California Class lost money or property as a result of Defendant's FAL violations because (a) they would not have purchased the Products on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the Products due to Defendant's misrepresentations; and (c) the Products did not have the characteristics, benefits, or ingredients as promised.

## COUNT VI

## NEGLIGENT MISREPRESENTATION
### (All States)

106. Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

107. Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Class.

108.    In making the false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would pay a premium for Products labeled as "Naturally Soothing" over comparable products that are not so labelled, furthering Defendant's private interest of increasing sales for its Products and decreasing the sales of products that are truthfully offered as "Naturally Soothing" by Defendant's competitors, or those that do not claim to be "Naturally Soothing".

109.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiffs and the other Class members in that they paid a premium price for Products that were not as represented.

110.    In making the representations of fact to Plaintiffs and members of the Class described herein, Defendant has failed to fulfill their duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendant' negligence and carelessness.

111.    Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

112.    Plaintiffs and members of the Class relied upon these false representations and nondisclosures by Defendant when purchasing the Products, upon which reliance was justified and reasonably foreseeable.

113.    As a result of Defendant's wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Products and any interest that would have

been accrued on those monies, all in an amount to be determined according to proof at time of trial.

**COUNT VII**

**BREACH OF EXPRESS WARRANTIES**
**(All States)**

114.     Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

115.     Defendant provided Plaintiffs and other members of the Class with written express warranties, including, but not limited to, warranties that their Products are "Naturally Soothing".

116.     This breach resulted in damages to Plaintiffs and the other members of the Class who bought Defendant's Products but did not receive the goods as warranted in that the Products were not as healthy nor as pure as they appear to be.

117.     As a proximate result of Defendant's breach of warranties, Plaintiffs and the other Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for Products that did not conform to what Defendant promised in their promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain and spent money on products that did not have any value or had less value than warranted or products that they would not have purchased and used had they known the true facts about them.

# COUNT VIII

## UNJUST ENRICHMENT
### (All States)

118. Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

119. As a result of Defendant's deceptive, fraudulent and misleading labeling, packaging, advertising, marketing and sales of Products, Defendant was enriched, at the expense of Plaintiffs and members of the Class, through the payment of the purchase price for Defendant's Products.

120. Plaintiffs and members of the Class conferred a benefit on Defendant through purchasing the Products, and Defendant has knowledge of this benefit and have voluntarily accepted and retained the benefits conferred on it.

121. Defendant will be unjustly enriched if it is allowed to retain such funds, and each Class member is entitled to an amount equal to the amount they enriched Defendant and for which Defendant has been unjustly enriched.

122. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that they received from Plaintiffs, and all others similarly situated, in light of the fact Defendant have misrepresented that the Products are "Naturally Soothing" when in fact, the Products contain the synthetic, unnatural ingredients Ascorbic Acid (Vitamin C), Citric Acid and Malic Acid.

123. Defendant profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiffs and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain said benefit.

124. Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and has lost money or property as a result of Defendant's actions, as set forth herein. Defendant is aware that the claims and/or omissions that it made about the Products are false, misleading, and likely to deceive reasonable consumers, such as Plaintiffs and members of the Class.

125. Plaintiffs and Class members do not have an adequate remedy at law against Defendant (in the alternative to the other causes of action alleged herein).

126. Accordingly, the Products are valueless such that Plaintiffs and Class members are entitled to restitution in an amount not less than the purchase price of the Products paid by Plaintiffs and Class members during the Class Period.

127. Plaintiffs and Class members are entitled to restitution of the excess amount paid for the Products, over and above what they would have paid if the Products had been adequately advertised, and Plaintiffs and Class members are entitled to disgorgement of the profits Defendant derived from the sale of the Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seek judgment against Defendant, as follows:

A. For an order certifying the nationwide Class and under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent members of the Class;

B. For an order declaring the Defendant' conduct violates the statutes referenced herein;

C. For an order finding in favor of Plaintiffs and the nationwide Class;

D.     For compensatory and punitive damages in amounts to be determined by the

Court and/or jury;

E.     For prejudgment interest on all amounts awarded;

F.     For an order of restitution and all other forms of equitable monetary relief;

G.     For injunctive relief as pleaded or as the Court may deem proper;

H.     For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and

expenses and costs of suit; and

I.     Any other relief the Court may deem appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiffs, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.


Dated:  November 16, 2015

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*


By: /s/C.K. Lee
         C.K. Lee, Esq.